TOMS (UNITED STATES v.). See Case No. 16,532.

## Case No. 14,092.

### The TONAWANDA.

[32 Leg. Int. 229;[1] 11 Phila. 516; 7 Leg. Gaz. 201; 1 Wkly. Notes Cas. 497.]

District Court, E. D. Pennsylvania. June 17, 1875.

COLLISION — SAIL AND STEAM VESSEL — LIGHTS — LOOKOUT — MISTAKEN MOVEMENT — ACT OF CONGRESS.

1. The enactment by congress (Rev. St. § 4234) that every sail-vessel shall, on the ap-

[1] [Reprinted from 32 Leg. Int. 229, by permission.]

proach of any steam-vessel during the night time, show a lighted torch upon that point or quarter to which such steam-vessel shall be approaching, does not apply in every case in which a steamer and a sailing vessel may pass near to each other.

2. Where the proximate cause of the collision of a steamer with a schooner was a mistaken movement of the steamer after the schooner's green light had been sighted, the steamer was condemned as responsible for the whole damage sustained by the schooner, though no torch-light had been shown by her, the lookout from each vessel having been insufficient.

[Cited in brief in The Margaret, Case No. 9,-069.]

In admiralty. This was a libel on behalf of the owners of the schooner H. P. Blaisdell against the steamship Tonawanda, belonging to the Philadelphia and Southern Mail Steamship Company, in a cause of collision. There was also a petition of intervention on behalf of the Insurance Company of North America, insurers of certain locomotive engines laden on board the schooner at the time of the collision. The steamer filed an answer and also a cross libel against the schooner. The collision took place about twenty miles off Cape Hatteras, on the 10th of May, 1875, at half-past two o'clock a. m. The steamer heading north and the schooner south by east, close hauled. The steamer struck the schooner head on just abaft the main rigging, sinking her almost immediately. The night was somewhat hazy, the wind a moderate breeze from the southwest.

The nautical assessor reported as follows, June 14, 1875:

In the matter of the "Schooner H. P. Blaisdell v. Steamer Tonawanda," I am satisfied that a poor lookout was kept on board of both vessels; this seems to be verified by the mate of the steamer "Wyoming," (belonging to the same company,) who saw the Tonawanda's light fifteen minutes before they came up with each other. Now, as they were going nine knots each, or coming together at the rate of eighteen knots, this would give the distance at which the Tonawanda's light could be seen as not less than four and one-half miles. The schooner should have seen the steamer's light before her lights were visible to the Tonawanda. The captain of the schooner, when first seeing the bright light of the steamer, thought it was from one-third to one-half a mile distant. Now, under this impression, there was no necessity for doing any thing at all, as the schooner would have passed far clear of the steamer. The captain got the "night-glass" to make sure that he was correct, and during this elapsed time he found, on discerning the red and green lights, that the steamer was in much closer proximity than he had supposed; he then got the flash-light, but too late. Now, although he should have shown the flash, yet I do not think that the showing it would have prevented the collision. Had there been a good lookout on board the Tonawanda she would have seen

the schooner's green light in time to have avoided any confusion on board the steamer, as there apparently was in giving the order to hard-a-port, which would have been quite correct had it been a white, natural light, but the report of the "lookout" was "green" light ahead. This was repeated. The only evolution with this report of green light ahead was for the steamer to "hard-a-starboard," and I assert that no possible contingency could place two vessels in such a position—"green light ahead" that would admit of any other than putting the wheel to starboard on the steamer. How the mate who was in charge of the deck at the time could have made so great a blunder (he is a man of undoubted experience and ability) is a mystery to me. The captain made an attempt to correct the error of the mate, by endeavoring to change the wheel to starboard, but too late. The blunder of the mate can only be accounted for by the impression made on his mind from the captain saying it was about time for them to see the New York steamers, and under this impression the order to hard-a-port was given. Another blunder was, a bell "to stop" was not rung until the instant of collision, for the engineer says (in the log) "bell rung to stop at same time I felt the shock."

In steamers navigating the American coast too much carelessness is practiced in not making frequent signals with the steam whistle in foggy or hazy weather or unfavorable nights. The whistle is so readily available that no possible excuse can be presented for the neglect thereof. The schooner did right in putting her wheel to starboard, as her captain knew that the approaching steamer, seeing his green light, must starboard her wheel under all circumstances, and pass "green to green." The captain of the schooner states that his starboarding did not cause her to fall off much, yet I feel confident she did fall off far enough to bring her at right angles with the steamer, but, under the dreadful excitement of the moment, the captain did not notice the change.

I therefore conclude that the Tonawanda was in fault: 1st, for an indifferent "lookout"; 2d, in going at full speed in the then condition of the atmosphere and also in not stopping before the order to "hard-a-port" was given; 3d, and principally, if not wholly, in porting the wheel instead of starboarding.

June 15, 1875, the assessor said:

An important reason suggests itself to my mind (which I overlooked yesterday) as more clearly showing the blunder made by the mate of the Tonawanda in porting the wheel. For instance, suppose he did think that the light was that of a steamer, he could not tell from the mere seeing the "bright light" how that steamer was steering, and consequently should not have moved the wheel at all until the "green and red" became visible, as those lights are intended expressly to show how

the vessel is going. I think this very important, as the respondents endeavored to show that porting the wheel was the right, if not the only movement the Tonawanda could make.

On the subject of flash-lights the assessor said:

There are many cases in which showing the flash is entirely unnecessary; for instance, a vessel in close proximity, either to the windward or to leeward, going either in the same or the opposite direction, crossing the bow or stern, the captains being fully aware of their relative positions, with the colored lights in sight, indicating the course steered, I say that under such a state of facts the necessity for showing the flash does not exist. Again, there are many cases in which it is altogether impossible to show the flash or any other naked light; for instance in blowing, or wet, or very bad weather the torch cannot be lighted on deck, having to depend on the ordinary matches for that purpose. The writer has been obliged frequently to resort to the cabin lamp for lighting the flash after ineffectual attempts to light it on deck, thereby losing many precious minutes, which might have led to most disastrous consequences.

Edward F. Pugh and James B. Roney, for the schooner.

Richard C. McMurtrie, for the insurance company.

Henry R. Edmunds and Morton P. Henry, for the steamship.

CADWALADER, District Judge. The immediate cause of the disaster was the mistake in porting, instead of starboarding, the wheel of the steamer. That the light which had been discerned from her was the schooner's green light, appears not only from the testimony of the man upon the lookout in the steamer, but likewise from the subsequent conduct of the master of the steamer. Almost instantly, but too late to remedy the evil, he endeavored to change the wheel to starboard, in order to correct the mistake. This effort he would not have made, unless he had known that it was the green light which he had seen. So I should think, and so the assessor informs me.

The proximate cause having thus been ascertained, secondary questions arise from the twofold consideration that the steamer and the schooner were each in fault in not keeping a proper lookout. How does this apply to the vessels respectively? If the schooner had been discerned in time from the steamer, the mental "confusion," to which the assessor attributes the blunder of porting instead of starboarding, would not have occurred. This only confirms the conclusion which has otherwise been reached, that the steamer was in fault.

The remaining question is, whether the schooner was also in fault in such wise that

she must answer for half the damages. The argument against the schooner is, that if the steamer had been discerned in time, the flash of the schooner's torch could have been exhibited soon enough to have warned the steamer. There is no reason to doubt, that if she had been thus warned in season, the collision would not have occurred. This gives an imposing aspect to the argument. But the true question is, whether, assuming that the torch-light ought to have been shown, the omission to show it was contributory, as a proximate cause to the collision.

It was contended in argument, that the enactment of congress requiring a sailing vessel in certain cases, to exhibit such a flash-light, was equivalent to the requirement, as to a steamer, that she shall have a white light. But the comparison fails in several respects. The torch which burns out in two or three minutes, and is relighted by hand, cannot exhibit a fixed and continuous uniform indication like a steamer's white light. Moreover, the white light is ordinarily discernable before the steamer's red or green light can be seen. The act of congress, on the contrary, does not, in ordinary cases, require the torch light to be shown till after the red or green light shall have been seen. Nor does the act require the exhibition of such a light in every case of a sailing vessel and a steamer passing near to each other. The enactment is, that "every sail-vessel shall, on the approach of any steam-vessel, during the night time, show a lighted torch upon that point or quarter, to which such steam-vessel shall be approaching." Certainly, if the lights are red to red, or green to green, this enactment does not apply, because, although the vessels may pass near to each other, the steamer is not, in either case, approaching, in a nautical sense, on any point or quarter. She is not approaching, within the words or meaning of the act, but is on a course to pass clear. It is not necessary to define all those other cases in which the enactment may or may not apply, or to consider how far it may, in such respects, be interpretable with reference to prior usages of navigation as to torch lights. Nor is it necessary to inquire whether it would have been the duty of the schooner to flash her torch at any given distance, if there had been a proper lookout from her, and the steamer had been discerned at the proper time. The reason that these questions do not require consideration is, that in the case which actually occurred, the insufficiency of the lookout, if it was, in any respect, a cause of danger, was not a proximate cause of the disaster. The sole cause to which the collision is properly attributable, was the mistaken movement of the steamer.

The question thus decided is between the two vessels. Whether any different or modified question might arise in a proceeding against the schooner at the suit of the owners of her cargo, cannot be determined upon the present state of the record. The steamer alone is condemned as responsible for the whole damage.

TONAWANDA. The. See Case No. 14,109.